UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | :    Case No. 23-cr-51 (ABJ) |
| | : |
| DYANI PEZZELLE, | : |
| | : |
| Defendant. | : |

### MOTION FOR EMERGENCY
### REVIEW AND APPEAL OF RELEASE ORDER

    The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order by the Honorable Keith Pesto issued on March 31, 2023. The government requests that the Court, first, extend the stay of the release order in this matter, and second, hear an appeal to review and overturn the Magistrate Judge's denial of the government's motion for pre-trial detention pursuant to 18 U.S.C. § 3142(f)(1)(C) (Controlled Substances Act offense) and (f)(2)(A) (risk of flight) as to Defendant Dyani Pezzelle.

    The Magistrate was incorrect in holding that Defendant Pezzelle presented sufficient evidence to overcome the presumption of dangerousness and risk of flight in this case. The Government maintains that she is a danger to the community because she was directly involved in a conspiracy that distributed thousands of fake, deadly, oxycodone pills containing fentanyl throughout the United States *and* possessed several firearms in connection with the offense. In addition, Defendant is a risk of flight and non-compliance because she faces a 10-year mandatory minimum *and* continued to engage in criminal conduct (including possessing thousands of pills and illegal firearms) *after* law enforcement informed her they were investigating her and the co-

1

Defendant.

## Procedural History

Defendant Pezzelle is charged by indictment with one count of Conspiracy to Distribute and/or Possess with intent to Distribute more than 400 grams of Fentanyl, Methamphetamine, and Metonitazene in violation of Title 21 U.S.C. §§ 846 and 841(b)(1)(A). Despite being presented with facts that Defendant was distributing thousands of lethal fentanyl pills and possessed several firearms, Magistrate Judge Pesto of the Western District of Pennsylvania denied the government's motion for pre-trial detention.

Magistrate Judge Pesto articulated his reasoning to be that: 1. Defendant has lifelong ties to the community within the Western District of Pennsylvania; 2. Defendant, in Judge Presto's opinion, appears to have played a minor role in the conspiracy; and 3. Defendant's dangerousness to the community is questionable. While Defendant may have ties to her local community, Defendant did not play a minor role in the conspiracy. Indeed, her distribution of thousands of fentanyl pills and possession of firearms shows that she is a danger not just to her local community, but to all of the communities to which she personally sent lethal narcotics.

## II. Legal Authority and Argument

Title 18, U.S.C. § 3145(a) states:

**(a) Review of a release order –** If a person is ordered released by a magistrate, …

> (1) the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release
> . . .

The motion shall be determined promptly.

On the government's motion to review a release order, this Court considers *de novo* the Magistrate Judge's denial of pre-trial detention. In its discretion, the Court may proceed to

rehear the evidence by recalling the witnesses, reviewing transcripts, or by proceeding through proffer and argument. It may take additional evidence from new witnesses or consider arguments not previously raised. In short, the Court may proceed as best enables it to resolve the question posed: whether any condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. As the legislative history of the 1984 Bail Reform Act amendments shows:

> [T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving violence. . . .

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3195-3196.[1]

The defendant is subject to detention pursuant to 3142(f)(1)(C) because he is charged with

---

[1] To that end, it is worthwhile recalling Congress' intent in 1984 when it enacted the current version of the Bail Reform Act:

> Many of the changes in the Bail Reform Act reflect the . . . determination that Federal bail laws must . . . give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released. . . . The constraints of the Bail Reform Act fail to grant the Courts the authority to impose conditions of release geared toward assuring community safety, or the authority to deny release to those defendants who pose an especially grave risk to the safety of the community. . . . *This broad base of support for giving judges the authority to weigh risks to community safety in pretrial release decisions is a reflection of the deep public concern, which the Committee shares, about the growing problem of crimes committed by persons on release.*

See S.Rep. No. 225, 98th Cong., 2d Sess. 307, reprinted in 1984 U.S. Code Cong. & Ad. News 3182, 3486-3487. (Emphasis added.)

a serious drug felony. Pursuant to 18 U.S.C. §§ 3142(e)(3)(A), there exists a rebuttable presumption that no conditions or combinations of conditions can effectively ensure the defendant's appearance in this case and otherwise protect the community. The government must establish by clear and convincing evidence that a defendant is a danger to the community. *United States v. Peralta*, 849 F.2d 625, 626 (D.C. Cir. 1988).

If the defendant has been indicted for "an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act[,]" the Court must presume, subject to rebuttal, that there is no condition or combination of conditions that will reasonably assure the defendant's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). The indictment, standing alone, constitutes probable cause that the person charged committed the offense and is "enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community." *Smith, supra*, 79 F.3d at 1210; *accord United States v. Williams*, 811 F. Supp.2d 274, 276 n.2 and 277 (D.D.C. 2011) (citing *Smith* and *United States v. Carter*, 802 F. Supp.2d 180, 182 (D.D.C. 2011)). Relying on the legislative history of this provision, the District of Columbia Circuit Court has observed that the rebuttable presumption covering serious drug trafficking offenses was included because of the "significant risk of pretrial recidivism" among persons charged with major drug felonies. *United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 225, 98th Cong., 1st Sess. 20 (1983), U.S. Code Cong. & Admin. News 1984, p. 3203)). When the rebuttable presumption of Title 18, United States Code, Section 3142(e) is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *Id.* at 371.

4

There are four factors under Section 3142(g) that the Court should consider and weigh in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). In consideration of these factors, along with the applicable rebuttable presumptions, the government respectfully submits that there is no condition, or combination of conditions, that would assure the safety of the community or the defendant's appearance at future proceedings.

## Argument

A consideration of the four factors under 18 U.S.C. § 3142(g) indicate that defendant Pezzelle cannot overcome the presumption of detention in this case.

### A.   Nature and Circumstances of the Offenses Charged

This case arises from a long-term investigation by the WFO-FBI Hi-tech Opioid task force into major U.S. based fentanyl suppliers utilizing the darknet website known as Tor2Door. As part of the investigation, law enforcement used Under Cover (UC) officers to make controlled buys of narcotics from U.S. based vendors. During the investigation, the task force identified a vendor known as "YourVendorsSupplier" (YVS) as a significant fentanyl and methamphetamine distributor. Agents were able to identify one of the owners of this vendor profile as Jacob Blair, Defendant's boyfriend, co-conspirator, and now, Co-Defendant.

In February 2022, a search warrant was executed on Jacob Blair's home, pursuant to a separate DEA investigation, which resulted in the seizure of multiple kilograms of fentanyl pills, multiple firearms, and more. At the time of the search warrant execution, Defendant Pezzelle was interviewed by Homeland Security Investigations (HSI) and claimed she had no knowledge of

Blair's drug trafficking activities (despite admitting that she resided with him a few nights a week). Subsequent to this search warrant execution and interview, however, Defendant joined her boyfriend, now Co-Defendant Blair, in operating the fentanyl and methamphetamine distribution network.

Defendant and Blair operated their trafficking network out of their shared home in Pennsylvania, as well as the home of Blair's mother. In February 2023, the task force executed another search warrant on Defendant's shared home with Blair, as well as the home of Blair's mother, and a storage unit registered in the Defendant's name. From the shared home, law enforcement recovered over a kilogram of fentanyl pills, containers of loose powder, three (3) firearms, multiple binding agents, USPS mailers, bubble wrap, and label maker machines.[2] From Blair's mother's home, law enforcement recovered a pill press, two (2) firearms, die tablets, and bags of mixed powders. From the storage unit, law enforcement recovered six (6) firearms, many of which had high-capacity magazines attached. None of the six firearms recovered from the storage unit were registered to Pezzelle.

The defendant was present at the shared home at the time of the search warrant execution, and was subsequently interviewed. The defendant admitted that she was helping Blair traffic in controlled substances. The defendant explained that she had access to the various darknet accounts, would regularly access and view the accounts to review orders that have been placed, create a shipping list corresponding to the orders, and would mail the packages herself. The defendant also claimed ownership of all of the firearms seized.

Law enforcement is in possession of surveillance video footage depicting the defendant driving to a USPS mail drop off box and depositing several manilla folders. Additionally, law

---

[2] Photos are included at the end of this motion.

6

enforcement is in possession of multiple text message conversations between the defendant and Blair, in which they discuss orders that have been placed and work that needs to be done.

This first factor clearly weighs in favor of detention. Again, the defendant is charged in a long running, large-scale narcotics conspiracy, that continued to operate after law enforcement interviewed the defendant. Moreover, as explained below regarding the weight of the evidence, the defendant is responsible for dealing in two of the most dangerous drugs in the United States—fentanyl and methamphetamine. Congress recognized the seriousness of drug trafficking by enacting the presumption that those charged with such offenses be held without bond. See 18 U.S.C. § 3142 (e)(3)(A). The courts have likewise repeatedly found that this factor weighs in favor of detention in narcotics cases. See, e. g., United States v. Santiago-Pagan, 2009 WL 1106814 at * 7 (citing cases); United States v. Pina-Aboite, 97 Fed. Appx. 832, 836 (10th Cir. 2004); United States v. Washington, 2022 WL 17168604 at *2 (E.D. Tenn.) (noting particular deadly risks of fentanyl); United States v. Taylor, 449 F. Supp. 3d 668, 673 (E.D. Ky. 2020) (same). There can be no doubt that this factor favors detention, and, while the magistrate did not expressly address this factor, the defendant does not appear to argue otherwise.

  **B.**  **Weight of the Evidence**

This factor also weighs in favor of detention. The evidence recovered from the search warrant at the defendant's shared residence with her co-conspirator provides strong support for the charges against her. In their residence, agents and officers recovered over a kilogram of suspected fentanyl, containers of loose powder, three (3) firearms, multiple binding agents, USPS mailers, bubble wrap, and label maker machines—most of which were in plain view, strewen about the house

The defendant also confirmed, in the interview related to the February 2023 search, that she had an active role in this drug trafficking operation. She stated that she had access to the vendor accounts across darknet sites, would access the accounts to review incoming orders, and mailed shipments herself. Law enforcement has video surveillance footage that appears to corroborate her admission of mailing the controlled substances.

While the magistrate did not explicitly address the strength of the evidence, it clearly weighs in favor of detention. See United States v. Zhang, ]51 F. 4th 141 (2d Cir. 2022) (holding that each factor is to be given equal weight); see also United States v. Blackson, 23-cr-25 (Doc. 18 at 17-20) (Howell, C.J.) (following Zhang and discussing contrary opinion from Ninth Circuit).

## C.     The Defendant's History and Characteristics

Under this factor, the court is to consider a defendant's criminal convictions, arrests, employment status, ties to the community, and past performance while on release. See United States v. Taylor, 289 F. Supp. 3d 55, 70 (D.D.C. 2018) (Moss, J.); see also United States v. Thomas, 21-cr-724 (Doc. 13) (Opinion and Order Detaining Defendant) at 5 (Cooper, J.).

While the defendant does not have a prior record, her actions throughout the investigation are indicative of her characteristics and are disturbing. As mentioned above, the Defendant was clearly made aware of the Blair's illegal activity and actions during an interview by HSI in 2022. Rather than walking away, the Defendant then joined her boyfriend and actively participated in this drug trafficking operation; illustrating the Defendant's indifference to following the rule of law.

## D.     Danger to the Community

The final factor is the danger to the community. The presumption under § 3142(e)(3)(A), establishes that narcotics trafficking remains an "inherently dangerous activity." See United States

v. Bethea, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (Lamberth, J.). Indeed, the Sixth Circuit has noted that it "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the mill drug dealers, even without any indication that the defendant has engaged in violence." United States v. Stone, 608 F.3d 939, 947, n. 6 (6th Cir. 2010).

Hre, the defendant's conduct occurred against the backdrop of a widespread, lethal drug epidemic. According to the DEA, fentanyl "is similar to morphine but about 100 times more potent[. . . .] Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction[. . . .]" *See* DEA, *Facts about Fentanyl*, https://www.dea.gov/resources/facts-about-fentanyl. Startingly, "two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage." *Id.* The lethality of fentanyl is reflected in nationwide statistics: roughly 101,552 people in this country died of drug overdoses in the 12-month period ending in August 2022. *See* CDC National Center for Health Statistics, *Provisional Drug Overdose Death Counts* (based on data available as of January 1, 2023), https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm. Of these deaths, roughly 68,740 (or about 68 percent) involved synthetic opioids. *Id.*

The following facts illustrate the danger of the fentanyl pills that the Defendant was distributing:

- According to Howard University Hospital, the District has close to 400 opioid related deaths per year – contributing to the third highest opioid mortality rate in the country with 34.7 deaths per 100,000 persons compared to the national average of 14.6 deaths.[1]

- In Maryland in 2020, there were 803 firearms deaths (CDC); but 2,342 fentanyl related deaths (Maryland Department of Health Annual Report).

---

[1] https://www.huhealthcare.com/health-services/sbirt/opioids-dc/#:~:text=Reach%20Out&text=The%20District%20of%20Columbia%20has,national%20average%20of%2014.6%20deaths.

- In DC in 2019, there were 141 firearms deaths (Johns Hopkins); but 257 Fentanyl related deaths (DC Office of the Chief Medical Examiner).

- 95% of opioid overdoses in DC in 2021 involved fentanyl (DC Office of the Chief Medical Examiner).

- The number of fentanyl related deaths in DC is clearly on the rise. There were 257 in 2019; 382 in 2020; and 402 in 2021 (DC Office of the Chief Medical Examiner).

- 2 milligrams of Fentanyl can be a lethal dose (https://www.dea.gov/resources/facts-about-fentanyl).

- The DEA laboratory has found that, of the fentayl-laced fake prescription analyzed in 2022, six out of ten now contain a potentially lethal dose of fentanyl (https://www.dea.gov/onepill).

Considering the totality of the circumstances, the defendant's role in the charged conspiracy demonstrates that detention is necessary. Fentanyl is an extremely lethal drug. Two milligrams can be fatal. See United States v. Glasgow, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.). Moreover, with six out of ten pills containing a lethal dose, the Defendant and Co-Defendant are easily responsible for distributing thousands of lethal doses. The defendant had an active role in the receipt and organization of online orders over various darknet websites, placed the packages containing these extremely lethal drugs into the mailing system, and lived in a shared home with Blair wherein law enforcement found drugs, as well as firearms, conspicuously throughout the home.

**Conclusion**

The United States respectfully requests that the Court immediately stay the Magistrate's release Order and order defendant Dyani Pezzelle detained pending trial after thoroughly reviewing the Government's motion.

Respectfully submitted,

MATTHEW GRAVES,
UNITED STATES ATTORNEY

By:   /s/ *Robert P. Sainvil*
Robert P. Sainvil
NY Bar No. 5311824
Assistant United States Attorney
United States Attorney's Office for D.C.
Patrick Henry Building
601 D Street, N.W., Fifth Floor
Washington, D.C. 20530
E-mail: Robert.Sainvil2@usdoj.gov
Telephone: (202) 252-7562



Firearms recovered from Blair/Pezzelle Residence



*Firearm recovered from Defendant's purse*

13



*Vacuum Sealed Fentanyl Pills in their bedroom*



*Packaging and Shipping Operation in the Laundry Room*

*Pills, Powder, and Packaging Material Throughout the Home*





