UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Case No. 23-CR-051 (ABJ) |
| | : | 24-CR-560 (ABJ) |
| **JACOB BLAIR,** | : | |
| | : | |
| Defendant. | : | |

## GOVERNMENT'S STATEMENT OF OFFENSE
## IN SUPPORT OF DEFENDANT'S PLEA OF GUILTY

**I.   Summary of the Plea Agreement**

In Case No. 23-CR-051 (ABJ) (D.D.C.), defendant Jacob Blair agrees to admit guilt and enter a plea of guilty to Counts One and Three of the Second Superseding Indictment, dated March 23, 2023, charging him with Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B); and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

In Case No. 23-CR-026 (NR) (W.D. Pa.), defendant Jacob Blair agrees to admit guilt and enter a plea of guilty to Count Two of the Indictment, dated February 14, 2023, charging him with Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and 841(b)(1)(B)(vi), and 841(b)(1)(B)(viii).

1

## II.     Elements of the Offenses

Case No. 23-CR-051 (ABJ) (D.D.C.)

The essential elements of the offense of Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841 (b)(1)(B), each of which the Government must prove beyond a reasonable doubt, are:

1. That an agreement existed between two or more persons to commit the crimes of distribution and possession with the intent to distribute a controlled substance;

2. That the defendant intentionally joined that agreement;

3. That the defendant knew the purpose of the agreement was to distribute and posses with the intent to distribute a controlled substance; and

4. That the amount of said mixture and substances, which includes the reasonably foreseeable conduct of all members of the conspiracy, was 400 grams or more of fentanyl and 50 grams or more of methamphetamine.

The law makes fentanyl and methamphetamine controlled substances.

The essential elements of the underlying offense of Possession with Intent to Distribute a Controlled Substance, here 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), each of which the Government must prove beyond a reasonable doubt, are:

1. That the defendant possessed a mixture and substance containing a detectable amount of a controlled substance – here, 400 grams or more of a mixture and substance containing fentanyl, and 50 grams or more of a mixture and substance containing methamphetamine;

2. That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently;

2

3. That when the defendant possessed the controlled substance, the defendant had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person; and

4. That the amount of said mixture and substances was 400 grams or more of fentanyl and 50 grams or more of methamphetamine.

The essential elements of the offense of Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), each of which the Government must prove beyond a reasonable doubt, are:

1. That the defendant possessed a firearm; and

2. That the defendant did so in furtherance of a drug trafficking crime which may be prosecuted in federal court, here, Count One in the Second Superseding Indictment, Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841 (b)(1)(B).

<u>Case No. 23-CR-026 (NR) (W.D. Pa.)</u>

The essential elements of Possession with Intent to Distribute a Controlled Substance, here 40 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and 841(b)(1)(B)(vi), and 841(b)(1)(B)(viii), each of which the Government must prove beyond a reasonable doubt, are:

1. That the defendant possessed a mixture and substance containing a detectable amount of a controlled substance – here, 40 grams or more of a mixture and substance containing fentanyl, and 50 grams or more of a mixture and substance containing methamphetamine;

2. That the defendant did so knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently;

3. That when the defendant possessed the controlled substance, the defendant had the specific intent to distribute it. Distribute means to transfer or attempt to transfer to another person; and

3

    4.      That the amount of said mixture and substances was 40 grams or more of fentanyl and 50 grams or more of methamphetamine.

The law makes fentanyl and methamphetamine controlled substances.

## III. Penalties for the Offenses

In Case No. 23-CR-051 (ABJ) (D.D.C.), the penalty for Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841 (b)(1)(B), is a mandatory minimum sentence of 120 months (10 years) of imprisonment and a maximum sentence of life imprisonment; a fine not to exceed the great of that authorized in accordance with the provisions of Title 18 or $10,000,000; a term of supervised release of not less than five years; a special assessment of $100, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made. In addition, the penalty for Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i), is a mandatory minimum sentence of 60 months (5 years) of imprisonment and a maximum sentence of life imprisonment; a fine not to exceed $250,000; a term of supervised release of not more than five years; a special assessment of $100, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

In Case No. 23-CR-026 (NR) (W.D. Pa.), the penalty for Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and 841(b)(1)(B)(vi), and 841(b)(1)(B)(viii) is a mandatory minimum sentence of 60 months (5 years) of imprisonment and a maximum sentence of 480 months (40 years) of imprisonment, a fine not to exceed the great of that authorized in accordance with the provisions

of Title 18 or $5,000,000; a term of supervised release of not less than four years; a special assessment of $100, and an obligation to pay any applicable interest or penalties on fines and restitution not timely made.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

### IV.  Statement of the Facts

The following statement of facts does not purport to include all of the defendant's illegal conduct. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

<u>Case No. 23-CR-051 (ABJ) (D.D.C.)</u>

Had this case gone to trial, the Government's evidence would prove the following:

1. From at least August 1, 2022, through at least February 24, 2023, defendants Jacob Blair and Dyani Pezzelle knowingly and willfully combined, conspired, confederated, and agreed together and with other persons to distribute controlled substances, including but not limited to 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, and 50 grams or more of a mixture and substance containing a detectable amount of methamphetamine (hereinafter, "the Conspiracy").

2. During the Conspiracy, defendants Jacob Blair and Dyani Pezzelle operated vendor accounts on various darknet marketplaces, including Tor2Door. Specifically, Blair and Pezzelle operated on darknet marketplace Tor2Door under the moniker "YVS" and "YVendorSupplier" and created a vendor account and profile to advertise their controlled substances for sale.

3. The YVS vendor profile operated by Blair and Pezzelle was active on the Tor2Door market since at least May 2022. Since that time, Blair and Pezzelle used the YVS vendor profile

*JB   12/17/24*

to complete at least 459 sales of illegal narcotics. YVS advertised themselves on Tor2Door as "a syndicate of professionals that specialize in making the best products the markets have to offer. We focus on quality, consistency, stealth, and speed. Nothing but the best . . . now vending on 5 markets, time will show that we mean business, and we're here to stay." YVS listed a variety of drugs for sale on their Tor2Door market vendor account, including multiple varieties of counterfeit Oxycodone pills, counterfeit Adderall pills, and counterfeit Xanax pills. The counterfeit Oxycodone pills contained fentanyl and the counterfeit Adderall pills contained methamphetamine.

4. The purpose of the Conspiracy was to distribute counterfeit controlled substances for profit by selling a variety of controlled substances on the darknet and shipping them throughout the United States, including to the District of Columbia.

5. During the Conspiracy, Blair manufactured and obtained counterfeit Oxycodone, Adderall, and Xanax pills for sale. Blair posted these controlled substances on Tor2Door and other marketplaces for sale. Blair and Pezzelle received orders for controlled substances and receipt payment in the form of Bitcoin or Monero cryptocurrency on Tor2Door and other marketplaces. After payment was confirmed, Blair and Pezzelle would pack the controlled substances in vacuum-sealed packaging, packing materials, and padded shipping envelopes to disguise the substance, and drop the packages in various United States Postal Service drop boxes located in West Virginia and Pennsylvania for shipment throughout the United States, including to the District of Columbia.

6. During the Conspiracy, Blair and Pezzelle shipped counterfeit Oxycodone pills to the District of Columbia on at least six occasions. These pills contained fentanyl, a Schedule II narcotic drug controlled substance, and metonitazene, a Schedule I controlled substance. In addition, during the Conspiracy, Blair and Pezzelle shipped counterfeit Xanax pills to the District

of Columbia on at least two occasions. In addition, during the Conspiracy, Blair and Pezzelle shipped counterfeit Adderall pills to the District of Columbia on at least three occasions. These pills contained methamphetamine, a Schedule II narcotic drug controlled substance.

7.  During the conspiracy, Blair and Pezzelle received payment for sales of controlled substances in the form of Bitcoin and Monero, and sent these proceeds between multiple cryptocurrency wallets and to various cryptocurrency exchange services in order to conceal and disguise the illicit source of the payments and to exchange the illicit proceeds for United States currency.

8.  During the conspiracy, Blair possessed a pill press and multiple tableting die to make counterfeit pills appear similar to genuine prescription pills.

9.  On February 22, 2023, law enforcement executed a controlled delivery and search warrant at the residence of Blair and Pezzelle, located at 812 Lexington Drive, Aliquippa, Pennsylvania 15001. Blair and Pezzelle were present inside of the residence at the time of the search. At approximately 6:00 a.m., the time the search warrant was executed by law enforcement, Blair was operating his darknet vendor account for controlled substances at a computer in the living room. During the search, law enforcement recovered items including, but not limited to, the following: two firearms, a loaded Intratec 22LR and a loaded Glock 43, located next to the computer and chair in the living room; in Blair and Pezzelle's bedroom, approximately 21,102 blue tablets marked "M 30", which DEA laboratory testing determined to weigh approximately 2,340 grams and contain fentanyl; additional suspected controlled substance powder and pills; assorted ammunition; a Nutribullet with powder residue; and other pill manufacturing, packaging, and distribution supplies.

JB  12/17/24

10. In addition, on February 22, 2023, law enforcement executed a search warrant at defendant Jacob Blair's mother's residence, to which Blair had access, located at 1044 Whispering Woods Drive, Moon Township, Pennsylvania. During the search, law enforcement recovered items including, but not limited to, the following: an industrial pill press; multiple pill press die; a black bag containing blue pills that weighed approximately 35.4 grams, including packaging; a Ruger 5.7 caliber firearm, Serial No. 642-1558; a Radical RF-15 .556 caliber firearm, Serial No. 2-057359; a Magic Bullet with powder residue; and other pill manufacturing and distribution supplies.

11. In addition, on February 22, 2023, law enforcement executed a search warrant at a storage united maintained by defendant Jacob Blair, located at Local Storage Group, 617 Moon Clinton Road, Unit 418, Coraopolis, Pennsylvania 15108.

12. During the search, law enforcement recovered items including, but not limited to, the following firearms: Century Arms RAS47; F.M. Products FMP9; FN 503; Glock 23; Glock 27; FN 509; and assorted firearm ammunition, magazines, and accessories.

13. On February 24, 2023, law enforcement located and seized a Ledger cryptocurrency wallet from Blair's person. The Ledger wallet was subsequently found to contain approximately 4.58 BTC (Bitcoin) and 169 XMR (Monero), which constitute proceeds of the Conspiracy related to the sales of controlled substances in or around 2023. In addition, defendant Jacob Blair stored at least approximately 5.3 BTC (Bitcoin) between August 2022 and December, which constitutes proceeds of the Conspiracy, that has not been located and seized by law enforcement.

14. Blair and Pezzelle possessed the controlled substances, seized by law enforcement on February 22, 2023, including fentanyl, with the intent to distribute them.

15. On February 22, 2023, Blair possessed the loaded Intratec 22LR and Glock 43 firearms in connection with his possession with the intent to distribute the controlled substances.

<u>Case No. 23-CR-026 (NR) (W.D. Pa.)</u>

Had this case gone to trial, the Government's evidence would prove the following:

1. On February 24, 2022, law enforcement executed a controlled delivery and search warrant at defendant Jacob Blair's residence, located at 1044 Whispering Woods Drive, Moon Township, Pennsylvania. Blair and two other family members were present inside the residence at the time of the search. During the search, law enforcement recovered items including, but not limited to, the following items located in Blair's bedroom: a plastic container containing approximately 1,692 blue tablets marked "M 30", which DEA laboratory testing determined to weigh approximately 207 grams and contain fentanyl; a plastic bag containing approximately 1,212 orange tablets marked "30" and "b974", which DEA laboratory testing determined to weigh approximately 494 grams and contain methamphetamine (mixture); additional assorted tablets; and approximately $138,000 in U.S. currency. In addition, law enforcement recovered numerous narcotics paraphernalia and distribution supplies inside the residence, including but not limited to U.S. Mail shipping boxes and labels, plastic baggies, aluminum foil seals, a vacuum sealer machine, and a scale.

2. In addition, on February 24, 2022, law enforcement executed a search warrant at a storage unit maintained by defendant Jacob Blair, located at 24 Furnace Street Extension, Unit #4W319, McKees Rocks, Pennsylvania. During the search, law enforcement recovered items including, but not limited to, the following items located in the storage unit: a plastic bag containing approximately 6,800 tablets, which DEA laboratory testing determined to weigh approximately 706 grams and contain fentanyl; a plastic bag containing approximately 75,226 blue

JB 12/17/24

tablets marked "B707", which DEA laboratory testing determined to weigh approximately 11.6 kilograms and contain etizolam; an industrial pill press; and multiple industrial pill press die sets.

3. The defendant possessed the controlled substances, seized by law enforcement on February 24, 2022, including fentanyl and methamphetamine, with the intent to distribute them.

4. The defendant maintained the storage unit located at 24 Furnace Street Extension, Unit #4W319, McKees Rocks, Pennsylvania, for the purpose of manufacturing or distributing controlled substances, including but not limited to fentanyl.

\*   \*   \*

This proffer of evidence is not intended to constitute a complete statement of all facts known by the parties, but is a minimum statement of facts intended to provide the necessary factual predicate for the guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the defendant's plea of guilty to the charged crime. This Statement of Offense fairly and accurately summarizes and describes some of the defendant's actions and involvement in the offenses to which the defendant is pleading guilty.

Defendant Jacob Blair has no information which would contradict the charges alleged in the Second Superseding Indictment in Case No. 23-CR-051 (ABJ) (D.D.C.), and the Indictment in Case No. 23-CR-026 (NR) (W.D. Pa.).

          Respectfully submitted,

          MATTHEW M. GRAVES
          United States Attorney

By:   */s/ Thomas G. Strong*
      Thomas G. Strong
      Assistant United States Attorney
      601 D Street NW
      Washington, DC 20001
      (202) 252-7063
      thomas.strong@usdoj.gov

80   12/17/24

## DEFENDANT'S ACKNOWLEDGMENT

I have read the Statement of Offense setting forth the facts related to my guilty plea. I have discussed this Statement of Offense fully with my attorney, Christopher Davis, Esq. I fully understand this Statement of Offense and I acknowledge its truthfulness, agree to it and accept it without reservation. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully.

Date: 10-7-24

Jacob Blair
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read each of the pages constituting the Statement of Offense related to my client's guilty plea. I have reviewed the entire Statement of Offense with my client and have discussed it with him fully. I concur in my client's agreement with and acceptance of this Statement of Offense.

Date: 10-3-24

Christopher Davis, Esq.
Attorney for Defendant