UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| v. | : | Case No. 23-CR-051-1 (ABJ) |
| | : | Case No. 24-CR-560 (ABJ) |
| **JACOB BLAIR,** | : | |
| | : | |
| Defendant. | : | |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this sentencing memorandum to assist the Court's consideration of sentencing in this case. For the reasons outlined below and in consideration of the factors set forth in 18 U.S.C. § 3553(a), the Government requests that the Court impose a sentence of 180 months of imprisonment and five years of supervised release.

### FACTUAL AND PROCEDURAL BACKGROUND

**I.   The Offense Conduct**

As summarized in the Statement of Offense in Support of Defendant's Guilty Plea (ECF No. 59 at 5-11) and the Presentence Investigation Report ("PSR") (ECF No. 76, ¶¶ 34-51), the defendant's guilty plea acknowledged two criminal schemes: first, in Case No. 24-CR-560, Mr. Blair's possession with intent to distribute large quantities of fentanyl and methamphetamine in February 2022; and second, in Case No. 23-CR-051, Mr. Blair and his co-defendant's conspiracy to distribute and possess with intent to distribute large quantities of fentanyl and methamphetamine on the darknet between August 2022 and February 2023, as well as Mr. Blair's possession of firearms in furtherance of that offense.

On February 24, 2022, law enforcement executed a controlled delivery and search warrant at Mr. Blair's residence in Moon Township, Pennsylvania. Mr. Blair and additional family

1

members were present in the home at the time. During the search, investigators recovered items including but not limited to a plastic container containing approximately 1,692 blue tablets marked "M 30" that tested positive for fentanyl (total mixture weight of 207 grams), approximately 1,212 orange tablets marked "30" and "b974" that tested positive for methamphetamine (total mixture weight of 494 grams), and approximately $138,000 in U.S. Currency, and narcotics paraphernalia and distribution supplies including shipping labels, plastic baggies, aluminum foil seals, a vacuum sealer machine, and a scale. PSR ¶¶ 48-49. Additionally, law enforcement executed a search warrant at a storage unit used by Mr. Blair in McKees Rocks, Pennsylvania. During the search, investigators recovered items including but not limited to a plastic bag containing approximately 6,800 tablets that tested positive for fentanyl (total mixture weight of 706 grams), a plastic bag containing approximately 75,226 blue tablets marked "B707" that tested positive for etizolam (total mixture weight of 11.6 kilograms), an industrial pill press, and multiple industrial pill press die sets. PSR ¶ 50.

In addition, between August 2022 and February 2023, Mr. Blair and his co-defendant conspired to distribute large quantities of fentanyl and methamphetamine on the darknet. PSR ¶ 35. Mr. Blair operated vendor accounts on multiple darknet marketplaces, including Tor2Door. On the Tor2Door market, Mr. Blair used the moniker "YVS" and "YVendorSupplier" and created a vendor account and profile to advertise the drugs for sale. PSR ¶ 36. In the time since May 2022 that Mr. Blair's YVS vendor profile was active on Tor2Door, he completed at least 459 sales of illegal narcotics. PSR ¶ 37. Mr. Blair advertised the "YVS" vendor as on Tor2Door as "a syndicate of professionals that specialize in making the best products that markets have to offer. We focus on quality, consistency, stealth, and speed. Nothing but the best…now vending on 5 markets, time will show that we mean business, and we're here to stay." *Id.* YVS listed a variety of drugs for

sale on their Tor2Door market vendor account, including multiple varieties of counterfeit Oxycodone, Adderall, and Xanax pills. *Id.* The counterfeit Oxycodone pills contained fentanyl and the counterfeit Adderall pills contained methamphetamine. *Id.* Mr. Blair also shipped drugs sold by the YVS account throughout the United States, including to the District of Columbia. PSR ¶ 38.

During the conspiracy, Mr. Blair manufactured and obtained counterfeit Oxycodone, Adderall, and Xanax pills for sale. PSR ¶ 39. Mr. Blair and his co-defendant sold these controlled substances on Tor2Door and other darknet markets, and received payments for orders in the form of Bitcoin and Monero cryptocurrency. PSR ¶ 39. Once an order was received, Mr. Blair and his co-defendant packed the controlled substances in vacuum-sealed packaging, as well as other packing materials and padded shipping envelopes, to disguise the contents and shipped the packages via United States Postal Service drop boxes in West Virginia and Pennsylvania. *Id.*

On February 22, 2023, almost exactly one year after first search warrant, law enforcement executed a controlled delivery and search warrant at Mr. Blair's and his co-defendant's residence in Aliquippa, Pennsylvania. PSR ¶ 43. Mr. Blair and his co-defendant were both present at the location. At the time of the search, Mr. Blair was operating his darknet vendor account on a computer in the living room with two loaded firearms within reach. *Id.* During the search, investigators also recovered items including but not limited to approximately 21,102 blue tablets marked "M 30" that tested positive for fentanyl (total mixture weight of 2.34 kilograms), ammunition, a Nutribullet with powder residue, and other pill manufacturing, packaging, and distribution supplies.

Additionally, law enforcement executed a search warrant at Mr. Blair's mothers' residence in Moon Township, Pennsylvania. PSR ¶ 44. During the search, investigators recovered items including but not limited to an industrial pill press, multiple pill press die, two firearms, and other

pill manufacturing, packaging, and distribution supplies. *Id.* Law enforcement also executed a search warrant at a storage unit used by Mr. Blair in Coraopolis, Pennsylvania, where investigators recovered multiple firearms, ammunition, magazines, and accessories. PSR ¶ 45

On February 24, 2023, law enforcement located and seized a Ledger cryptocurrency wallet from Mr. Blair. PSR ¶ 46. he Ledger wallet contained approximately 4.58 BTC (Bitcoin) and 169 XMR (Monero), which were proceeds of the conspiracy related to the sales of controlled substances in or around 2023. *Id.* Additionally, Mr. Blair stored proceeds of at least approximately 5.3 BTC between August 2022 and December 2022 that has not been located or seized by law enforcement. *Id.*

## II.  Procedural History

On December 17, 2024, Mr. Blair pleaded guilty to the following offenses in each case pursuant to a Plea Agreement:

- In Case No. 23-CR-051, Counts 1 and 3 in the Second Superseding Indictment dated March 23, 2023: Conspiracy to Distribute and Possess with Intent to Distribute 400 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a), 841(b)(1)(A), and 841(b)(1)(B); and Using, Carrying, and Possessing a Firearm During a Drug Trafficking Offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

- In Case No. 24-CR-560, Count 2 in the Indictment, dated February 14, 2023: Possession with Intent to Distribute 40 Grams or More of a Mixture and Substance Containing Fentanyl, and 50 Grams or More of a Mixture and Substance Containing Methamphetamine, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B)(vi), and 841(b)(1)(B)(viii).

*See* December 18, 2024 Minute Entry; ECF Nos. 56-59.

## ANALYSIS

### I.  Relevant Sentencing Considerations

The Court should fashion a sentence based on the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a). *See Gall v. United States*, 552 U.S. 38, 50 (2007). These factors include:

4

(1) the Sentencing Guidelines and related Sentencing Commission policy statements; (2) the nature and circumstances of the offense and the history and characteristics of the defendant; (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; and (4) the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a).

Though the Sentencing Guidelines are advisory, *United States v. Booker* provides that sentencing courts "must consult those Guidelines and take them into account when sentencing." 543 U.S. 220, 264 (2005); *United States v. Brown*, 892 F.3d 385, 399 (D.C. Cir. 2018). Indeed, the Guidelines provide "the starting point and the initial benchmark" for sentencing. *Gall v. United States*, 590 U.S. 38, 49 (2007); *see also United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006) ("*Booker* has not changed how the Guidelines range is to be calculated."). Moreover, the Guidelines' recommended sentencing range will ordinarily "reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." *Kimbrough v. United States*, 552 U.S. 85, 108-09 (2007); *Dorcely*, 454 F.3d at 376 (noting that "a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness").

## II. Defendant's Sentencing Guidelines Calculation

The parties and United States Probation are in agreement that Mr. Blair's Criminal History Category is I. The parties were not aware of any prior scorable criminal convictions (ECF No. 58 at 5); however, the Government does not dispute Probation's finding that Mr. Blair has a Criminal History score of 1. PSR ¶ 77-79. Nonetheless, Mr. Blair remains Criminal History Category I as estimated by the parties in the Plea Agreement.

The parties and Probation are also in agreement on their assessment of the applicable Sentencing Guidelines for both cases. *See generally* PSR ¶¶ 59-75. First, that Count 1 of the Second Superseding Indictment (Case No. 23-CR-051) and Count 2 of the Indictment (Case No. 24-CR-560) group together because the offense level is determined largely on the basis of the quantity of controlled substances involved in those offenses. PSR ¶ 63; U.S.S.G. § 3D1.2(d). the Parties further agree with Probation that the Base Offense Level for those offenses is 32 with an Adjusted Offense Level of 34, resulting in a Total Offense Level of 31 after the reduction of three points for acceptance of responsibility. PSR ¶¶ 64-74. Finally, the parties and Probation agree that Count 3 of the Second Superseding Indictment (Case No. 23-CR-051) carries a Guideline sentence of five years of imprisonment. PSR ¶¶ 61, 75. As a result, all parties agree that the aggregate Guideline range of imprisonment, factoring in appliable statutory minimums and the mandatory consecutive imprisonment term, is 180 to 195 months. PSR ¶¶ 115-121.

### III. Sentencing Recommendation

Consistent with the Plea Agreement, the Government respectfully submits that the statutory sentencing factors enumerated in 18 U.S.C. § 3553(a) support a Guideline sentence in this case equal to the aggregate mandatory minimum of 180 months of imprisonment. The Government further recommends that the Court impose a five-year term of supervised release to support and supervise Mr. Blair's reentry following the lengthy terms of imprisonment to be served in this case.

#### A. Nature of the Offense and Characteristics of the Defendant

As noted above, Mr. Blair is Criminal History Category I and does not have any significant prior criminal history. Nonetheless, the nature of his conduct in connection with the offense demonstrates a complete disregard for both the rule of law and safety of the community. Not only

did Mr. Blair actively conspire to possess and distribute large quantities of fentanyl and methamphetamine PCP over a period of years, but he continued to do so even after the February 2022 federal search warrants and substantial drug seizures at his residence and storage unit.

Mr. Blair was undeterred by the danger his conduct posed to the community. He manufactured and store large quantities of tablets containing fentanyl and methamphetamine at his residences and storage units, and also kept manufacturing tools and supplies at his family members' home. In addition, Mr. Blair built the YVS vendor profile into a leading drug vendor operating on multiple markets, during which time he executed more than 450 sales on the Tor2Door market alone and shipped illegal drugs nationwide. The fact that his conspiracy broadly distributed such harmful and dangerous drugs at scale multiplied the impact and risk of harm to others. And although Mr. Blair was permitted to own and possess firearms under federal law, he was not permitted to do so in connection with this drug conspiracy, an aggravating factor which Mr. Blair has also admitted and accepts responsibility for.

For these reasons, a Guideline sentence of 180 months of imprisonment, followed by five years of supervised release, will provide just punishment and necessary deterrence for Mr. Blair to not engage in such harmful conduct in the future. The Government's recommended sentence is substantial—indeed, the 15-year term of imprisonment is more than half of Mr. Blair's lifetime thus far. And five years of supervised release will provide lengthy supervision and support to ensure that Mr. Blair does not fall back into addiction or similar drug conduct in the future.

**B.     The Need for the Sentence Imposed**

The Government's recommended sentence is also justified by the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes

of the defendant, and to provide the defendant with needed correctional treatment. 18 U.S.C. § 3553(a)(2). The recommended sentence of 180 months of imprisonment and five years of supervised release does just this.

Mr. Blair was actively engaged in a conspiracy to distribute large quantities of harmful drugs over the course of multiple years. As discussed above, his criminal actions were both serious and posed a danger to others in the community. Here, a 180-month sentence strikes the proper balance between the serious nature of the defendant's actions, acknowledgement that the defendant does not have any significant prior criminal history, and consideration of the defendant's personal circumstances and history of serious drug addiction.

Further, the recommended sentence would also serve to protect the public from additional crimes by Mr. Blair while he is punished and rehabilitated, as well as serve to provide adequate deterrence from Mr. Blair committing other offenses going forward. *Id.* § 3553(a)(2)(B)-(C). Moreover, the recommended sentence would support general deterrence for others who may consider engaging in similar unlawful conduct, which should be a priority given the danger posed by large-scale drug distribution on the darknet. *Id.* § 3553(a)(2)(B).

The recommended sentence would also provide the defendant ample time to pursue educational and vocational training, as well as participate in other programs such as substance abuse education classes. *See* 18 U.S.C. § 3553(a)(2)(D). These commitments will hopefully lead Mr. Blair to a more productive and lawful life after his release. The Government also recommends that Mr. Blair be sentenced to five years of supervised release following his release from the term of imprisonment in this case. The Government believes that, particularly given Mr. Blair's history of addition and the lengthy term of imprisonment to be served, a significant five-year term of

supervised release after imprisonment would provide necessary support, supervision, and opportunity for his reentry and rehabilitation.

## CONCLUSION

For the reasons described above, the Government respectfully recommends that the Court impose a Guideline sentence of 180 months of imprisonment, to be followed by five years of supervised release.

                                                  Respectfully submitted,

                                                  EDWARD R. MARTIN, JR.
                                                  United States Attorney
                                                  D.C. Bar No. 481866

By:    */s/ Thomas G. Strong*
        THOMAS G. STRONG
        Assistant United States Attorney
        N.Y. Bar No. 4958658
        601 D Street NW
        Washington, DC 20530
        202-252-7063
        thomas.strong@usdoj.gov

**CERTIFICATE OF SERVICE**

    I hereby certify that I caused a copy of the foregoing to be served upon counsel of record via the Electronic Case Filing (ECF) system on April 17, 2025.

                                                    By:    */s/ Thomas G. Strong*
                                                               Thomas G. Strong
                                                               Assistant United States Attorney